

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANN MUNIZ and ED MUNIZ and JOSEPH SHROKA )
and DIANE SHROKA, individually )
and on behalf of all others similarly situated, )
)
      Plaintiffs, )
)   No. 04 C 2405
    v. )
)   Judge John W. Darrah
REXNORD CORPORATION, et al., )
)
      Defendants. )
)
_____ )
)
REXNORD CORPORATION, et al., )
)
    Third-Party Plaintiffs, )
)
    v. )
)
ARROW GEAR COMPANY, et al., )
)
    Third-Party Defendants. )
)
_____ )
)
LOVEJOY, INC., )
)
    Fourth-Party Plaintiff, )
)
    v. )
)
CORNING INCORPORATED, )
)
    Fourth-Party Defendant. )

## MEMORANDUM OPINION AND ORDER

Class Action Plaintiffs filed suit against Defendants, seeking recovery under Section 107 of

the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended

("CERCLA"), and pendent claims under Illinois common law. In their Complaint, Muniz alleged

release of chemicals, including trichloroethylene ("TCE") and perchloroethylene ("PCE"), in and around the industrial facilities located in the Ellsworth Industrial Park in Downers Grove, IL. These chemicals subsequently migrated into the groundwater, were released in airborne vapor, and have contaminated the Muniz's property and water supply. Plaintiffs allege that Defendants' businesses operating within the Ellsworth Industrial Park are liable for these injuries.

Defendants filed third-party contribution claims against multiple Third-Party Defendants, all of whom also operate or operated facilities in the Ellsworth Industrial Park that allegedly generated and so disposed of the toxic chemicals. Defendants/Third-Party Plaintiffs RHI Holding, Inc., The Fairchild Corporation, and Megnetrol International, Inc. (collectively "the Third-Party Plaintiffs"), filed contribution claims against Corning, Inc. Third-Party Defendant, Lovejoy, Inc., subsequently filed a fourth-party contribution claim against Fourth-Party Defendant, Corning.

The Third-Party Plaintiffs' contribution claim alleges Corning is liable for contamination of certain property in the Ellsworth Industrial Park ("the Property") that was previously owned by Harper-Wyman Company based upon the theory of successor liability. Lovejoy's Second Amended Third-Party Complaint alleges contribution claims against Corning based on the theory of successor liability and piercing the corporate veil.

Presently before the Court is Corning's Motion for Partial Summary Judgment and Lovejoy's Motion for Summary Judgment.

## FACTS

Both moving parties submitted multiple proposed statements of undisputed fact in support of their motions pursuant to Local Rule 56.1(a)(3). All opposing parties responded to the proposed statements of undisputed fact, contesting virtually all proposed statements of fact; and several parties

2

added additional proposed statements of undisputed fact pursuant to Local Rule 56.1(b)(3). The moving parties responded to the additional proposed statements of undisputed fact, contesting virtually all of the additional proposed statements of fact. The following minimal undisputed statements of fact are taken from the multiple pleadings but do not include citation to each parties' overlapping/duplicative proposed undisputed statements of fact.

The Third-Party Plaintiffs and Lovejoy formerly or currently owned property in the Ellsworth Industrial Park. (Corning's 56.1(a)(3) Statement ¶¶ 2-4, 10). From at least 1989, Lovejoy did not use TCE or PCE during its operations on the Property. (Lovejoy's 56.1(a)(3) Statement ¶ 15). Harper-Wyman also owned property within the Ellsworth Industrial Park, beginning in 1965. (Id., ¶ 5). During some time of Harper-Wyman's ownership of the Property, Harper-Wyman engaged in degreasing operations on the Property. The degreasing operations included the use of multiple chemicals. (Id., ¶ 6).

In 1971, Harper-Wyman discontinued its operations at the Property and moved its operations to a facility in Princeton, Illinois. (Lovejoy's 56.1(a)(3) Statement ¶¶ 8-9). Following Harper-Wyman's operations at the Princeton facility, the soils and groundwater at the Princeton facility became contaminated with TCE. (Id., ¶¶ 10-11).

In 1999, Corning entered into a Merger Agreement in which Corning Incorporated, as the parent corporation, formed Reisling Acquisition Corporation as a wholly owned subsidiary. Reisling was "merged with and into" Oak Industries, Inc., and Oak Industries became the surviving corporation. Each share of common stock of Oak Industries was cancelled and converted into the right to receive 0.83 shares of common stock of Corning. (Lovejoy's 56.1(a)(3) Statement ¶ 25). Harper-Wyman was a subsidiary of Oak Industries at the time of the merger. (Id., ¶ 26). Before

3

Reisling was merged with Oak Industries, Corning owned 100 percent of the voting shares of Reisling. Reisling owned 100 percent of the voting shares of Oak Industries. Oak Industries owned 100 percent of the voting shares of OakGrigsby, Inc., and OakGrisby, Inc. owned 100 percent of the voting shares of Harper-Wyman. (Id., ¶ 27). The merger agreement includes environmental liabilities of Oak Industries and its subsidiary Harper-Wyman but does not disclose the environmental liability of Harper-Wyman's activities at the Ellsworth Industrial Park. (Id., ¶ 28). The merger agreement identifies Harper-Wyman's Princeton facility as an environmental matter related to Harper-Wyman. (Id., ¶ 30). Corning contends that after the merger, Harper-Wyman's environmental liabilities remained with Harper-Wyman. (Id., ¶ 31; Lovejoy's 56.1(a)(3) Statement ¶ 25).

In 2002, nearly all of Harper-Wyman's assets were sold to Appliance Controls Group. Corning's participation and role in the sale is heavily disputed. (Id., ¶¶ 33-35). The sale included a provision that the "Oak Parties" retained the existing environmental liabilities associated with Harper-Wyman's business prior to the sale. (Id., ¶ 36). Corning's subsequent involvement in the environmental cleanup of the Princeton facility property is disputed. (Id., ¶¶ 38-40; Corning's 56.1(a)(3) Statement ¶¶ 19-22). Corning's involvement with Harper-Wyman is also heavily disputed. (Lovejoy's 56.1(a)(3) Statement ¶¶ 41-46, 49-54; Corning's 56.1(a)(3) Statement ¶¶ 16-17).

In January 2000, Lovejoy received notice from the United States Environmental Protection Agency that the EPA was investigating soil and groundwater contamination from chlorinated solvents in and around the Ellsworth Industrial Park. (Lovejoy's 56.1(a)(3) Statement ¶ 18). Based on the investigation, the EPA found contamination in the soil and groundwater at the Ellsworth

Industrial Park and identified multiple companies, including Lovejoy, as potentially responsible parties. (Id., ¶ 19). Lovejoy and other companies entered into an Administrative Settlement Agreement and Order pursuant to CERCLA, and the EPA covenanted not to sue or take any administrative actions against the signatories. (Id., ¶ 20). Lovejoy and other companies have expended funds in relation to the EPA action and other actions, including actions by the State of Illinois and the present suit. (Id., ¶¶ 21-22).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*).

Whether federal common law or state law applies to the parties' CERCLA successor liability claims, while not yet decided by the Seventh Circuit, does not affect the Court's analysis because the analysis is the same under either law. *See North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 651 (7th Cir. 1998) (*North Shore*) (applying federal common law without deciding the issue); *see also Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 945-46 (D. Del. (1977) (*Fehl*) (discussing successor

liability under Delaware law); *Vernon v. Schuster*, 179 Ill. 2d 338, 345 (1997) (*Vernon*) (discussing successor liability under Illinois law). Likewise, the analysis of the CERCLA claims applies the same law that controls the state law claims for contribution.

Generally, if a company that sells or otherwise transfers all of its assets to another company, the receiving company does not acquire the liabilities of the selling/transferring company. *See North Shore*, 152 F.3d at 651; *Fehl*, 433 F. Supp. at 945; *Vernon*, 179 Ill. 2d at 345. Four general exceptions apply to this general rule: (1) if the purchaser expressly or impliedly agrees to assume the liabilities; (2) the transaction is a *de facto* consolidation or merger; (3) the purchaser is a "mere continuation" of the seller/transferor; or (4) the transaction is an attempt to fraudulently escape liability. *See North Shore*, 152 F.3d at 651; *Fehl*, 433 F. Supp. at 945; *Vernon*, 179 Ill. 2d at 345. These exceptions, commonly referred to as successor liability, are based on an equitable theory applied at the discretion of the court to serve the purpose of identifying transactions where equity demands that the purchaser be held responsible for the seller's liabilities. *See North Shore*, 152 F.3d at 651, 657-58.

Corning argues that summary judgment should be granted in its favor because Harper-Wyman did not sell its assets to Corning. However, successor liability may also be found if there has been some form of a transfer of assets. *See Fehl*, 433 F. Supp. at 945; *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 651 (5th Cir. 2002); *New York v. N. Storonske Cooperage Co.*, 174 B.R. 366 (N.D. N.Y. 1994). Genuine issues of material fact exist as to whether the transactions between the multiple parties resulted in a form of transfer of Harper-Wyman's assets to Corning.

Furthermore, in light of heavily disputed facts surrounding the sale/merger of Harper-Wyman and other Corning subsidiaries and Corning's involvement in Harper-Wyman's business activities,

6

it is obvious, even without a detailed analysis of the facts regarding each of the four exceptions, that multiple genuine issues of material fact exist as to whether Corning impliedly agreed to assume Harper-Wyman's liabilities, whether the transaction resulted in a *de facto* merger, and whether the purchaser was a mere continuation of Harper-Wyman.[1]

## CONCLUSION

For the foregoing reasons, Corning's Motion for Partial Summary Judgment and Lovejoy's Motion for Summary Judgment are denied.

Dated: November 2, 2006

JOHN W. DARRAH
United States District Court Judge

---

[1] In light of sheer number of genuinely disputed material facts presented, which should be obvious to Corning and Lovejoy, particularly when considering the history of the (unnecessarily) contentious and extensive discovery and motion practice, it is unclear why the parties filed the motions.